UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED RENTALS, INC. and ) <br> UNITED RENTALS (NORTH AMERICA), INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ALBERT "TOMMY" FAULK, ) <br> ) <br> Defendant. ) <br> ) | CIVIL ACTION NO. <br><br><br> SEPTEMBER 2, 2010 |

### COMPLAINT

Plaintiffs, United Rentals, Inc., United Rentals (North America), Inc. and their affiliates (collectively "United" or "Plaintiff"), by and through United's undersigned attorneys, and for its Complaint for injunctive and other relief against Defendant, Albert "Tommy" Faulk ("Faulk" or "Defendant"), hereby state and allege the following:

**Nature of Action**

1. This action is based on the willful breach of a severance agreement and certain confidentiality clauses and restrictive covenants contained in a confidentiality and non-competition agreement; and sets forth claims for breach of contract, violation of the Uniform Trade Secrets Act, and tortious interference with economic advantage and existing business relationships. Among other things, Faulk is collecting severance payments from United while unlawfully competing with United in violation of the aforementioned agreements.

**Parties, Jurisdiction and Venue**

2. United Rentals, Inc. and United Rentals (North America), Inc. are Delaware corporations with their principal places of business in Greenwich,

Connecticut. United is engaged in the business of renting and selling equipment and merchandise to the commercial and general public throughout the United States, including Florida. United rents and sells, among other things, trench shoring equipment such as aluminum trench shields, steel trench shields, manhole shields, bedding boxes, crossing plates, pipe plugs, slide rail and build-a-box systems, among other items. Additionally, and at all relevant times thereto, United operated branches in Florida, including a branch facility in Jacksonville, Florida ("Jacksonville Branch").

   3. Upon information and belief, at all times relevant hereto and up to March 22, 2010, Faulk was a citizen of Florida and an employee of United.

   4. Jurisdiction over this matter arises under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction). The amount in controversy exceeds $75,000, exclusive of interest and costs.

   5. Faulk contractually submitted to the exclusive jurisdiction of this Court twice: (a) when he agreed to the terms of his confidentiality and non-competition agreement (the "Non-compete Agreement") with United dated April 24, 2008; and (b) when he agreed to a severance agreement and general release (the "Severance Agreement") (the Non-compete Agreement and Severance Agreement are referred to, collectively, as the "Agreements") with United dated April 26, 2010. The Severance Agreement, which supersedes all other agreements except for Faulk's post-employment obligations contained within the Non-compete Agreement, provides, in relevant part, the following:

> 8. <u>Choice of Law; Forum; Attorney's Fees</u>.  This Agreement shall be governed by the laws of the State of Connecticut, without regard to its conflict of laws principles.  **The interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state or**

> **federal courts sitting in Connecticut, and such courts are hereby granted exclusive jurisdiction for such purpose**…

(Emphasis added.) The claims contained herein arise, in part, out of the terms of the Agreements referenced above.

6. Venue is proper in this Judicial District under 28 U.S.C. § 1391(a)(2) & (a)(3) because the intellectual property that is the subject of the action is derived from and/or maintained in this district and because Faulk contractually submitted to the exclusive jurisdiction of this Court when he agreed to the terms of the Agreements.

**General Allegations**

7. At all relevant times up until March 22, 2010, Faulk was an employee of United. During the course of his employment, Faulk served as an Outside Sales Representative. Faulk operated out of United's Jacksonville Branch.

8. United's Jacksonville Branch generates significant revenues from, among other things, the sale and rental of shoring and other equipment to its customers. As an Outside Sales Representative, Faulk contributed significantly towards the revenues of the Jacksonville Branch.

9. As an Outside Sales Representative with United, Faulk had controlled access to certain of United's trade secrets. United's trade secrets include, but are not limited to, such things as: (1) gross rental data; (2) budget processes from market areas and rental projections; (3) marketing plans and strategies; (4) details of contracts; (5) actual and prospective customer data, including identities of United customers (i.e., United's customer list and customer contacts); (6) pricing and discount information; (7) cost information, including special programs and discount structures negotiated with particular equipment vendors; (8) information on the sources and nature of financing

3

United is able to secure for its customers; and (9) fleet information, including its make-up, cost and utilization.

10. United's trade secrets and other confidential information are shared with employees only as necessary, and only to those who agree to keep it confidential.

11. None of the foregoing trade secrets discussed above was known or open to the public and United undertook reasonable measures to keep the trade secrets confidential and out of the public domain.

**Faulk's Agreements**

*The Severance Agreement*

12. As part of Faulk's separation from United, Faulk agreed to enter into the Severance Agreement with United.

13. In the Severance Agreement, United agreed to make severance payments to Faulk for a period of up to 52 weeks. United's agreement to make those payments was "in exchange for [Faulk's] execution and delivery of [the Severance Agreement]," in which Faulk expressly agreed to the following:

> [4] (h) Continued Effect of Restrictive Covenants; Released Provision of Employment Agreement; Discharge of Salary Continuation. Except as specifically provided for in this Section 4(h), nothing contained [in this Severance Agreement] shall adversely affect or impair [United's] right to enforce any of the restrictive covenants or other post-employment obligations contained in the [Non-compete Agreement. Faulk] agrees that [Faulk's] post-employment obligations under the [Non-compete] Agreement shall remain in effect and enforceable in accordance with the terms of the [Non-compete] Agreement, and [Faulk] hereby reaffirms those obligations…

14. Among other obligations, Faulk thus reaffirmed and agreed to be bound by the confidentiality and non-compete obligations contained in the Non-compete Agreement.

4

***The Non-Compete Agreement***

15.     In order to protect its customer goodwill, confidential information, and trade secrets, United had requested that Faulk enter, and Faulk had agreed to enter, into the Non-compete Agreement in April 2008.

16.     In this regard, Faulk agreed to sign the Non-compete Agreement that contained a proscription against divulging confidential information.

17.     The Non-compete Agreement contained the following provisions, to which Faulk agreed, that outlined and defined "Confidential information" as follows:

>   (f)     Confidential information includes, but is not limited to:
>
>   (i)     business, pricing and management methods;
>
>   (ii)    finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;
>
>   (iii)   names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;
>
>   (iv)    technical information, work products and know-how;
>
>   (v)     cost, operating, and other management information systems, and other software and programming;  and
>
>   (vi)    the name of any company or business, all or any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects; and
>
>   (vii)   the Company's Trade Secrets.

18. The Non-compete Agreement also contained a restrictive covenant, which Faulk accepted, that restricted Faulk from, among other things, competing directly or indirectly with United, within a limited Restricted Area, during his employment and 12 months thereafter. Specifically, the Non-compete Agreement provides:

(a) During his . . . employment by the Company and for a period of 12 months immediately following the termination of his . . . employment for any reason whatsoever , whether or not for cause …, Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):

(i) in any Restricted Area (a "<u>Restricted Area</u>" means the area within a 50 mile radius of any and all Company locations in which Employee performed services for, or had management responsibilities for, at any time during the 24 month period immediately preceding the termination of Employee's employment with the Company), be employed or retained by any person or entity who or which then competes with the Company to any extent, nor will Employee directly or indirectly own any interest in any such person or entity or render to it any consulting, brokerage, contracting, financial or other services or any advice, assistance or other accommodation, including, but not limited to, providing services or rendering advice to a person or facility, who or which is located within the Restricted Area;

(ii) solicit the business of, or call upon, any person or entity who or which is or was (A) a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company, or who was a prospect for a business relationship with the Company, at any time during the period of his . . . employment, or (B) an affiliate of any such person;

(iii) approve, solicit or retain, or discuss the employment or retention (whether as an employee, consultant or other otherwise) of any person who was an employee of the Company at any time during the one-year period preceding the termination of Employee's employment by the Company;

(iv) solicit or encourage any person to leave the employ of the Company;

\*   \*   \*   \*   \*   \*   \*   \*

6

>      (vi)   own any interest in or be employed by or provide any services to any person or entity, which engages in any conduct, which is prohibited to Employee under this Section[.]

**Breaches/Tortious Conduct of Faulk**

19.    Faulk's separation date from United was March 22, 2010. In the Severance Agreement, and otherwise, United reminded Faulk of his continuing obligations under his Non-compete Agreement.

20.    Upon information and belief, Faulk has now begun competing within the Restricted Area. Specifically, Faulk has obtained employment with Efficiency Production, Inc. d/b/a Professional Shoring and Supply ("PSS) in Jacksonville, Florida, at the epicenter of the Restricted Area.

21.    Additionally, United has been made aware that Faulk, on behalf of himself and PSS, has called upon and solicited United customers that he had previous dealings with while employed by United.

22.    Upon information and belief, PSS is based in Michigan, claims to "provide[] the widest selection of standard and custom Trench Shielding and Shoring systems," and has several facilities in Florida – including the apparently-new facility in Jacksonville, Florida, at which Faulk is employed. Upon information and belief, PSS is operating within the Restricted Area and/or targeting United customers.

23.    Although Faulk provided United with some written notice of his new position as required under his Agreements, only upon written request by United did Faulk's counsel confirm that Faulk was employed at PSS's Jacksonville facility.

7

24. Upon information and belief, in engaging in this activity, Faulk has used or inevitably will use the valuable confidential trade secrets of United and/or provide same to PSS. Indeed, United has information that Faulk has already begun visiting, contacting, and/or soliciting United's customers whom he had previous dealings with while employed by United, for the benefit of PSS's facility which is within the Restricted Area.

25. Faulk committed the acts alleged herein with knowledge that his conduct would harm the financial interest of United.

26. Faulk committed the acts alleged herein for his own benefit and the benefit of PSS.

**COUNT I – Breach of the Agreements**

27. United realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 26 above as though fully set forth herein.

28. United and Faulk exchanged valuable consideration in support of the Non-compete Agreement and Severance Agreement.

29. United duly performed all of its obligations pursuant to the Agreements. Among other things, United continues to make severance payments to Faulk, who nevertheless is acting in violation of his obligations under the Agreements.

30. United is informed and believes that in his new position, Faulk has actively competed with United in soliciting United customers and/or being competitively employed within the Restricted Area, utilizing United's trade secrets and/or confidential information in conjunction with his efforts.

31. Faulk's conduct of being competitively employed within the Restricted Area and/or in soliciting United customers following his employment with United constitutes a material breach of the Agreements, including the restrictive covenants contained and referenced therein.

32. Faulk's conduct set forth in this Complaint further constitutes a material breach of the implied covenant of good faith and fair dealing in the Agreements.

33. Given his position as an Outside Sales Representative with United, Faulk was privy to confidential trade secrets, including, but not limited to, pricing, customer contacts and information, which he will inevitably disclose to and/or use on behalf of PSS.

34. Upon information and belief, after leaving United, and thereafter, in violation of the Agreements, Faulk provided PSS with confidential and/or trade secrets and Faulk used said information in an effort to compete with United on behalf of PSS.

35. Faulk's conduct, all while using United's confidential trade secrets, is a material breach of the Agreements, including, but not limited to, the restrictive covenants.

36. As a proximate result of Faulk's wrongful conduct, United has suffered and will continue to suffer irreparable harm and money damages.

37. As a result of the foregoing activities, Faulk is liable to United for breach of contract. United has suffered, and will continue to suffer, substantial and irreparable damages to its business and customer good will, as well as losses in an amount in excess of $75,000.00, but not yet fully ascertained, and which will be further determined according to proof.

38. United has no adequate remedy at law for Faulk's willful breach of the Agreements and restrictive covenants set forth or incorporated therein, in that: (i) United's trade secrets are unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom is continuing; and (iv) Defendant acknowledged in writing that a breach of the Agreements would constitute irreparable harm to United.

**COUNT II -  Trade Secret Misappropriation in Violation of the Uniform Trade Secrets Act**

39. United realleges and reincorporates herein by reference the allegations contained in Paragraphs 1 through 38 above as though fully set forth herein.

40. As an Outside Sales Representative for United, Faulk had access to confidential information, such as the following:

- United's confidential customer lists that are not readily ascertainable from public sources. United spent considerable time, energy and money cultivating these customers.

- United's confidential financial information and cost and profit margins. These figures are not available to the public and are held in confidence by United.

- United's cost information and discount information from certain vendors. United has been able to negotiate special terms with vendors that are not readily ascertainable by competitors and are terms that are kept in confidence by United.

- United's fleet information, including its make-up, cost and utilization. This information is not available to the public and is held in confidence by United.

- United's marketing plans and strategies, including United's potential satellite operations and other expansion plans.

41. The aforementioned trade secrets are not known to all United employees, nor are they known to those working in the industry. United's trade secrets were conveyed confidentially to Faulk, as necessary, in order to allow Faulk to fully carry out his job responsibilities on behalf of United.

42. United took reasonable measures to keep the trade secrets confidential. As stated above, only certain employees had access to trade secrets. Trade secret information was provided only to those who, like Faulk, agreed to keep such information confidential. Indeed, United required Faulk to sign a confidentiality agreement protecting the integrity of this information, and a Severance Agreement that reaffirmed those confidentiality obligations.

43. This information is highly valuable to United, and could enable United's competitors to challenge pricing and vendor relationships and/or steal private customer lists.

44. United spent considerable sums of money acquiring, maintaining and guarding this information.

45. Upon information and belief, Faulk misappropriated United's trade secrets when he began soliciting customers, using his knowledge of whom to contact, their product and service demands, and United's preferential pricing and terms.

46. Upon information and belief, Faulk misappropriated United's trade secrets when he wrongfully used those trade secrets on his own behalf and on PSS's behalf, and when he, on information and belief, provided same with his knowledge of those trade secrets.

47. There is a substantial threat that Faulk will continue to use and disclose United's trade secrets in an effort to acquire United's customers for the benefit of his new employer and himself personally.

48. Faulk willfully and maliciously misappropriated United's trade secrets, in that Faulk intended to solicit customers for the benefit of PSS and his own personal financial interest, all to the detriment of United.

49. Faulk's wrongful conduct is a violation of the Uniform Trade Secrets Act.

50. As a direct and proximate result of Faulk's wrongful conduct, United has suffered and will continue to suffer irreparable damages and money damages.

51. As a direct result of Faulk's willful conduct, United is entitled to punitive damages and attorneys' fees.

52. Based on Faulk's unlawful acts as alleged herein, United is being irreparably harmed in that: (i) United's trade secrets are a unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom, is continuing; and, (iv) the Defendant acknowledged, in writing, that a breach of the Agreements would constitute irreparable harm to United.

**COUNT III -- <u>Tortious Interference With Prospective Economic Advantage and Existing Business Relationships</u>**

53. United realleges and reincorporates herein by reference the allegations of Paragraphs 1 through 52 above as though fully set forth herein.

54. This Count states a claim for relief against Faulk for tortious interference with United's prospective economic advantage and existing business relationships with United's customers.

55. Economic relationships have existed between United and its customers and other entities, which have been advantageous to United.

56. Being in the business of, among other things, renting and selling trench safety, shoring, and other equipment within Florida, including Jacksonville and the surrounding area, United has developed valid and existing business relationships with hundreds of customers with the probability of future economic benefit for United.

57. United's Jacksonville Branch facility historically generates significant revenues, which are a result of United's substantial time, effort, training and resources devoted to developing business relationships with its customers.

58. As an Outside Sales Representative for United at the Jacksonville Branch, Faulk was aware, and had knowledge of the existence of the relationships United enjoyed with its customers.

59. Upon information and belief, in spite of this knowledge, Faulk wrongfully interfered with United's prospective economic advantage and existing business relationships by using and/or disclosing United's trade secrets and proprietary information to PSS, and by soliciting customers, all in violation of the Agreements.

60. Faulk engaged in these acts with full knowledge and/or recklessness and want of ordinary care in that such acts or omissions would necessarily interfere with or disrupt the economic relationships that United enjoyed with its customers, and these acts demonstrate Faulk's intentional or negligent conduct.

61. Upon information and belief, Faulk directly interfered with the economic relationships United enjoyed with its customers.

62. If not for the conduct of Faulk, United was reasonably certain to have entered into continued business relationships with its customers.

63. Faulk's conduct was intentional and willful in that Faulk intended to harm United's economic and financial interest.

64. Faulk's conduct was wrongful and not justified, privileged or excusable.

65. As a direct and proximate result of Faulk's wrongful conduct, United has suffered and will continue to suffer irreparable harm, as well as monetary damages insufficient to fully remedy United.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, **UNITED RENTALS, INC., and UNITED RENTALS (NORTH AMERICA) INC.,** respectfully request judgment in their favor and against Defendant **ALBERT "TOMMY" FAULK** as follows:

1. That Defendant breached his Agreements with United and the restrictive covenants contained and/or incorporated therein.

2. That Defendant violated the Uniform Trade Secrets Act.

3. That Defendant tortiously interfered with United's prospective economic advantage and existing business relationships.

4. That the Court enter an Order, preliminary and permanently enjoining Defendant, **ALBERT "TOMMY" FAULK**, from violating the terms of the Agreements, from misappropriating, using, or disclosing United's trade secrets, and from tortiously interfering with United's business expectancies.

5. That the Court award United compensatory damages arising out of Defendant's unlawful conduct alleged herein.

6. That the Court award United punitive damages.

7. That the Court award United its attorneys' fees.

8. That the Court award United punitive damages, attorneys' fees, expenses, interest, and costs, pursuant to the Agreements and/or common law.

9. That the Court impose a constructive trust and disgorgement of all compensation and other benefits which Defendant has derived or will derive as a result of his violation of the Non-compete Agreement.

10. That the Court require Defendant to reimburse United for all amounts paid, and the value of all benefits provided, to Defendant pursuant to the Severance Agreement.

11. That the Court grant United such additional relief as is just and proper.

Dated this 2nd day of September, 2010.

THE PLAINTIFFS
UNITED RENTALS, INC.
UNITED RENTALS (NORTH AMERICA), INC.


By: _____/s/_____
   Brian C. Roche – ct 17975
   Gerald C. Pia, Jr. – ct 21296
   Roche Pia, LLC
   Two Corporate Drive, Suite 248
   Shelton, CT 06484
   Phone: (203) 944-0235;
   Fax: (203) 567-8033
   E-mail: broche@rochepia.com
          gpia@rochepia.com
